# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA,      :
                                      :

            Plaintiff,          :      Civil Action No.:     00-3046 (RMU)
                                        :

            v.               :      Document No.:      54
                                        :

FUNDS FROM PRUDENTIAL      :
SECURITIES *et al.*,              :
                                        :

            Defendants.      :

## MEMORANDUM OPINION

### GRANTING THE PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DECREE FOR FORFEITURE

## I.   INTRODUCTION

This *in rem* civil forfeiture[1] matter comes before the court on the United States's ("government" or "plaintiff") motion for summary judgment and decree for forfeiture.  On December 21, 2000, the plaintiff filed a verified complaint for forfeiture *in rem* for Latonya Curtis's ("claimant") funds seized in August 2000.  Specifically, the plaintiff seized $41,059.86[2] in financial account funds and a $50.00 money order to enforce the provisions of 21 U.S.C. § 881(a)(6) and 18 U.S.C. § 981(a)(1)(A).  Because the plaintiff establishes by a preponderance of

---

[1]   "Civil forfeiture actions are brought against property, not people.  The owner of the property may intervene to protect his interest . . . In exercising *in rem* jurisdiction, the court . . . may adjudicate claims of ownership." *United States v. All Funds in Account No. 747034/278*, 295 F.3d 23, 25 (D.C. Cir. 2002).

[2]   In August 2000, when the government seized the financial accounts, their value totaled $41,059.86.  Pl.'s Mot. at 1-2.  In October 2004, at the time of the plaintiff's motion for summary judgment, the value of the financial accounts decreased to $30,229.70.  *Id.*

the evidence that claimant's financial account funds and money order are subject to civil forfeiture and the claimant fails to provide even a scintilla of evidence or allege specific facts that would enable a reasonable juror to find in her favor, the court grants the plaintiff's motion for summary judgment and decree of forfeiture.

## II.    BACKGROUND

In or about 1996, a joint task force, including the Federal Bureau of Investigation, the Washington D.C. Metropolitan Police Department, and the Department of Housing and Urban Development initiated an investigation of a drug trafficking organization run principally by Earl Garner, Sr., the claimant's then-boyfriend.  Pl.'s Mot. for Summ. J. at 13-14 ("Pl.'s Mot.").  The investigation allegedly revealed that the claimant assisted Garner, Sr. in various aspects of his drug trafficking.  *Id.* at 3.  The claimant and Garner, Sr. lived together in an apartment in North Bethesda, Maryland.  *Id.*  A search of the claimant's apartment, in connection with a related criminal case, revealed $529,919.00 in cash stored throughout the apartment.[3]  *Id.* at 24; Pl.'s Mot., Ex. VI-509-527.  Despite the claimant's relationship with Garner, Sr., and the discovery of cash stored in the claimant's apartment, the claimant was acquitted of the criminal charges brought against her of conspiracy to distribute and possession with the intent to distribute one kilogram or more of heroin and five kilograms or more of cocaine.  *Id.* at 14; Cl.'s Opp'n at 3. The government nonetheless seeks funds it believes are subject to forfeiture as drug proceeds and laundered money pursuant to 21 U.S.C. § 881(a)(6) and 18 U.S.C. § 981(a)(1)(A).

---

[3]        Because neither Garner, Sr. nor the claimant filed claims of ownership for the cash, the entire amount found in claimant's apartment was declared forfeited on April 30, 2001. Pl.'s Mot. at 23, Ex. VIII.

From 1998 to August 2000, a time in which the claimant and Garner, Sr. lived together, Pl's. Mot. at 22, the claimant maintained the defendant funds in bank and investment accounts in her name. *Id.* at 19-22. The defendant funds consist of funds from Prudential Securities Account #0GS257128-06 valued at approximately $18,019.54 at the time of forfeiture[4] ("Prudential Fund"), funds from Allfirst Bank Account #910334325 valued at approximately $13,500.54 at the time of forfeiture ("All First Fund 1"), funds from Strong Fund Accounts #0631201014490 and #0521201014454, together valued at approximately $6,453.16 at the time of forfeiture[5] ("Strong Funds"), funds from Allfirst Bank Account #536-8671-2 valued at approximately $3,086.62 at the time of forfeiture ("All First Fund 2"), and a $50 Global Express Money Order ("Money Order") (collectively, "defendant funds"). Pl.'s Mot. at 1-2.

The assets in the defendant funds, according to the financial records, consist of numerous cash and money order deposits. *Id.* All First Funds 1 and 2 consist of numerous large cash deposits of small denominations and occasionally, these deposits would occur multiple times per day. *Id.* at 19-20. The claimant opened Strong Fund with two Treasurer's checks worth $2,500 each, which the claimant obtained from her friend, Carrie Williams. *Id.* at 20. The assets in the Prudential Fund consist of five deposits of thirty-six money orders, totaling $19,200, made over the course of six months. *Id*. at 21. The overall 1998-2000 transactions in the defendant funds consisted of debits totaling $113,071.38 (withdrawals, credit card transactions, and written checks) and credits totaling $112,509.21 (deposits into the defendant funds). *Id.* at 30.

---

[4] The court notes that the assets in the Prudential Securities Account decreased since the time of seizure. At the time the plaintiff filed its motion the value was $8,896.78. Pl.'s Mot. at 1-2.

[5] The court notes that the value of Strong Fund Accounts decreased since the time of seizure. At the time the plaintiff filed its motion the value was $4,745.76. *Id.* at 2.

On December 21, 2000, the plaintiff filed a verified complaint for forfeiture *in rem* against the defendant funds.  After five years of the plaintiff and claimant bitterly contesting the source of these funds, the plaintiff brings the instant motion for summary judgment and decree for forfeiture.  The court now turns to that motion.

### III.    ANALYSIS

#### A.    Legal Standard for Summary Judgment

A party against whom a claim, counterclaim, or cross-claim is asserted may, at any time, move with or without supporting affidavits for a summary judgment in the party's favor as to all or any part thereof.  Fed.R.Civ.P. 56(b).  Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  FED. R. CIV. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Diamond v. Atwood*, 43 F.3d 1538, 1540 (D.C. Cir. 1995).  To determine which facts are "material," a court must look to the substantive law on which each claim rests.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A "genuine issue" is one whose resolution could establish an element of a claim or defense and, therefore, affect the outcome of the action.  *Celotex*, 477 U.S. at 322; *Anderson*, 477 U.S. at 248.

In ruling on a motion for summary judgment, the court must draw all justifiable inferences in the nonmoving party's favor and accept the nonmoving party's evidence as true.  *Anderson*, 477 U.S. at 255.  A nonmoving party, however, must establish more than "the mere existence of a scintilla of evidence" in support of its position.  *Id.* at 252.  To prevail on a motion

for summary judgment, the moving party must show that the nonmoving party "fail[ed] to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.  By pointing to the absence of evidence proffered by the nonmoving party, a moving party may succeed on summary judgment. *Id.*

In addition, the nonmoving party may not rely solely on allegations or conclusory statements. *Greene v. Dalton*, 164 F.3d 671, 675 (D.C. Cir. 1999); *Harding v. Gray*, 9 F.3d 150, 154 (D.C. Cir. 1993).  Rather, the nonmoving party must present specific facts that would enable a reasonable jury to find in its favor. *Greene*, 164 F.3d at 675.  If the evidence "is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50 (internal citations omitted).

### B.   Legal Standard for Civil Forfeiture

Statutory *in rem* forfeiture is the only action of England's three forfeiture laws that this country adopted.[6]  "English Law provided for statutory forfeitures of offending objects used in violation of the customs and revenue laws – likely a product of the confluence and merger of the deodand tradition and the belief that the right to own property could be denied the wrongdoer." *Calero-Toledo v. Pearson Yacht Leasing Co.*, 416 U.S. 663, 682 (1974).  The roots of forfeiture date further back to biblical times, for "if an ox gore a man or a woman, and they die, he shall be stoned and his flesh shall not be eaten." *Calero-Toledo*, 416 U.S. at 681 n.17 (quoting Exodus

---

[6]    England's three types of forfeiture include: (1) deodand, which is derived from the Latin term "Deo dandum," meaning "to be given to God"; (2) forfeiture after conviction for a felony or treason; and (3) statutory forfeiture. *Calero-Toledo v. Pearson Yacht Leasing Co.*, 416 U.S. 663, 680-89 (1974); *see also Austin v. United States*, 509 U.S. 602, 611 (1993).

21:28); *see also United States v. All Funds in Account Nos. 747.034/278, 747.009/278, & 747.714/278 Banco Espanol De Credito, Spain*, 295 F.3d 23, 25 (D.C. Cir. 2002).  Thus, forfeiture is an *in rem* action brought against property, not the owner of the property.  *All Funds*, 295 F.3d at 25.

Congress has set forth several types of property that are subject to civil forfeiture, two of which are proceeds from money laundering and illegal drug transactions.  18 U.S.C. § 981; 21 U.S.C. § 881.  Pursuant to 18 U.S.C. § 981,

> the following property is subject to forfeiture to the United States . . . any property, real or personal, involved in a transaction or attempted transaction in violation of 1956 [laundering of monetary instruments] or 1957 [engaging in monetary transactions in property derived from specified unlawful activity] of this title, or any property traceable to such property.

18 U.S.C. § 981(a)(1)(A).  Accordingly, the United States may successfully obtain a decree for forfeiture of property if it shows that the property was involved in a money laundering transaction or attempted transaction in violation of 18 U.S.C § 1956.  18 U.S.C § 981(a)(1)(A).  As provided in § 1956, one of the several ways to commit money laundering is by:

> knowing that the property involved in a financial transaction represents the proceeds of some form of unlawful activity, conduct[ing] or attempt[ing] to conduct such a financial transaction which in fact involves the proceeds of specified unlawful activity . . . knowing that the transaction is designed in whole or in part to conceal or disguise the nature, the location, the source, the ownership, or the control of the proceeds of specified unlawful activity[.]

18 U.S.C. § 1956(a)(1)(B)(i).  The court may embark on two possible approaches for determining if property is involved in money laundering and thus subject to forfeiture.  *United States v. Real Prop. Identified as Parcel 03179-005R*, 311 F. Supp. 2d 126, 129 (D.D.C. 2004).  The first approach is two-pronged: (1) that the claimant knew that the monetary instrument(s) involved in a financial transaction represented proceeds of some form of unlawful activity and (2) with that

knowledge  "used the proceeds to conduct or to attempt to conduct such a financial transaction

which in fact involves the proceeds of specified unlawful activity." *Id*. (citations omitted).  The

second approach is that the claimant used the monetary instrument(s) to "conduct or attempt to

conduct a financial transaction involving property represented to be the proceeds of specified

unlawful activity, or property used to conduct or facilitate specified unlawful activity." *Id*.

Proceeds from illegal drug transactions are also subject to forfeiture.  Pursuant to 21

U.S.C § 881(a)(6), the following are "subject to forfeiture to the United States and no property

right shall exist in them[:]"

> [a]ll moneys, negotiable instruments, securities, or other things of value furnished or
> intended to be furnished by any person in exchange for a controlled substance or
> listed chemical in violation of this subchapter, all proceeds traceable to such an
> exchange, and all moneys, negotiable instruments, and securities used or intended to
> be used to facilitate any violation of this subchapter, except that no property shall be
> forfeited under this paragraph, to the extent of the interest of an owner, by reason of
> any act or omission established by that owner to have been committed or omitted
> without the knowledge or consent of that owner.

21 U.S.C. § 881(a)(6).  In order to succeed in its forfeiture claim under § 881(a)(6), the plaintiff

must demonstrate that the defendant property is traceable to the illicit drug offenses.  *United*

*States v. Brock*, 747 F.2d 761, 762 (D.C. Cir. 1984); *see also United States v. $174,206.00*, 320

F.3d 658, 662 (6th Cir. 2003) (stating that the plaintiff in a civil forfeiture case must show by a

preponderance of the evidence that the defendant property is traceable to illicit drug offenses

after the enactment of 18 U.S.C §983(c)(1) in August of 2000) .

In a civil forfeiture action, the plaintiff's burden is twofold: (1) to establish by a

preponderance of the evidence that the defendant property is subject to forfeiture and (2) that

there is a substantial connection between the defendant property and the alleged offense.  18.

U.S.C. § 983(c); *see also United States v. One 1998 Tractor,* 288 F. Supp. 2d 710, 711

(W.D.V.A. 2003); 170, *United States v. $21,510 in U.S. Currency*, 292 F. Supp. 2d 318, 320

(D.P.R. 2003).

Once the plaintiff meets its burden, the burden shifts to the claimant to demonstrate by a

preponderance of the evidence that the property is not related to any illegal activities, or

alternatively, that the claimant is an innocent owner of the property.  18. U.S.C. §

983(d)(2)(A)(i),(ii); *see also United States v. Prop. Identified as 1813 15th St., N.W., Wash.,*

*D.C.*, 956 F. Supp. 1029, 1035 (D.D.C. 1997); *United States v. Prop. Identified as 908 T St.,*

*N.W., Wash., D.C.*, 770 F. Supp. 697, 702 (D.D.C. 1991).  A claimant establishes an "innocent

owner defense," by showing by a preponderance of the evidence that she did not know of the

conduct giving rise to the forfeiture or upon learning of the conduct did all that reasonably could

be expected to terminate such use of the property.  18. U.S.C. § 983(d)(2)(A)(i),(ii); *1813 15th*

*St.*, 956 F. Supp. at 1035; *908 T St.*, 770 F. Supp. at 702.  The absence of a criminal conviction

does not in and of itself establish the claimant's burden because such an absence is irrelevant in a

civil forfeiture proceeding, which is directed against the property, not the owner.  *Austin v.*

*United States*, 509 U.S. 602, 627 (1993) (Scalia, J. concurring in part and concurring in

judgment) (stating that a conviction is irrelevant and 21 U.S.C. § 881 "requires only that the

Government show probable cause that the subject property was used for the prohibited

purpose"); *Real Prop.*, 311 F. Supp. 2d at 129 n.5.  If the claimant fails to satisfy her burden, the

plaintiff prevails and the seized property will be forfeited to the United States.  *$174,206.00 in*

*U.S. Currency*, 320 F.3d at 662.

8

### C.   The Court Grants the Plaintiff's Motion for Summary
### Judgment and for Decree of Forfeiture

The plaintiff's burden as the moving party may be discharged by showing that there is an

absence of evidence to support the nonmoving party's case. *Celotex*, 477 U.S. at 325. Here, in

support of its motion for summary judgment, the plaintiff comes forward with substantial

evidence supporting its averment that the defendant funds are linked to illicit drug transactions

and money laundering. Specifically, the plaintiff presented the claimant's bank records during

the period of July 1998 through July 2000, which indicate that the credits in the claimant's bank

accounts totaled $113,071.38, and the debits in the same accounts totaled $112,509.21. Pl.'s

Mot. at 19-20. The plaintiff also demonstrates that the claimant regularly made large and

multiple cash deposits on the same day. *Id.*; Pl.'s Mot., Ex. VI-1186A, 1186B, 1207. To further

its claim, the plaintiff compared the claimant's tax records with the bank accounts of the

defendant funds. The claimant's tax records from 1998 to 2000 represent that the claimant's

income, derived from employment and other legitimate means, totals $75,118.02. *Id.* at 26. The

court agrees with the plaintiff that this comparison establishes that during this time period, the

defendant funds far exceeded the claimant's legitimate income per her tax records. *Id.* The

plaintiff bolsters its position with the fact that cash totaling $529,919 was discovered in the

claimant's apartment. *Id*. at 22-23. Lastly, the plaintiff introduces transcripts of witness's sworn

testimony representing that the plaintiff had extravagant spending habits and made several loans

to friends during the time she lived with Garner, Sr. *Id*. at 12. After reviewing the plaintiff's

motion and voluminous exhibits,[7] the court concludes that there is a substantial discrepancy

---

[7]    The plaintiff's exhibits consist of 12 binders, containing 2,739 pages.

between the claimant's accountable legitimate income and the much larger deposits into the defendant funds. Accordingly, the plaintiff has shown by a preponderance of the evidence that the defendant funds are the proceeds of or are otherwise traceable to drug trafficking activities and money laundering described in *United States v. Earl Garner, Sr.,et al.*, Cr. Action No. 00-252 (RMU).

Because the plaintiff meets its burden, the burden now shifts to the claimant to set forth specific facts showing that the defendant funds consist of only legitimate income or that the she is an innocent owner of illegitimate funds. 18. U.S.C. § 983(d)(2)(A)(i), (ii); *see also 1813 15th St.*, 956 F. Supp. at 1035. The claimant here does not aver that she is the innocent owner of otherwise illegitimate funds, but rather, she argues that the defendant funds derive solely from her legitimate income and have no connection to Garner. Sr.'s drug trafficking. Cl.'s Opp'n at 4. The claimant responds to the plaintiff's motion with an eight-page opposition containing a series of allegations and conclusory statements. For instance, the claimant blames the plaintiff for "playing the market" with her funds and claiming she is not responsible for any loss, Cl.'s Opp'n at 1-2; alleges that some of the plaintiff's witnesses are not trustworthy, *id.* at 3; claims she has unusual banking habits, *id.* at 4; and references a chart that allegedly explains her income for the time period, *id.* at 6. The claimant does not, however, include the chart with her opposition, set forth any facts with specificity to support her bald assertions, nor provide any factual evidence whatsoever. The court notes that it did find and examine the claimant's chart, as it is attached to the plaintiff's motion for summary judgment as one of the many exhibits. Pl.'s Mot., Ex. XII. The court further notes that the claimant does not address the discovery of cash totaling $529,919.00 in her apartment.

10

The court notes that the claimant brought this claim *pro se.*  While "pro se litigants are allowed more latitude than litigants represented by counsel to correct defects in service of process and pleadings," *Moore v. Agency for Int'l Dev.*, 994 F.2d 874, 301, 329 (D.C. Cir. 1993), this court has already warned *this* claimant that "the court is reluctant to stretch the considerable latitude that *pro se* litigants enjoy to allow for a litigant to wholly abandon her role in the adversarial system." *U.S. v. Funds From Prudential Sec.*, 300 F. Supp. 2d 99, 108-109 (D.D.C. 2004) (citing *Moore*, 994 F.2d at 876 (citations omitted)); *Carducci v. Regan*, 714 F.2d 171, 177 (D.C. Cir. 1983); *Vasapolli v. Rostoff*, 39 F.3d 27, 36 (1st Cir. 1994).  Additionally, the less stringent standard for *pro se* litigants does not allow them to simply disregard the applicable Local and Federal Rules of Civil Procedure or render the court the decision-maker of "what claims a [litigant] may or may not want to assert." *Jarrell v. Tisch*, 656 F. Supp. 237, 239 (D.D.C. 1987).

After reviewing all the evidence, the court concludes that the plaintiff's legitimate income, as represented on her tax records, for the period 1998 through 2000, is $75,118.02.  The plaintiff, per her chart, represents her income for the same period as $124,464.00, which comprises her legitimate (tax reported) income as well as outside source income.  Not surprisingly, the claimant is unable to substantiate her additional outside source income with even a shred of evidence.  Additionally, the claimant fails to explain the $529,919 cash discovered in her apartment or produce any witnesses to support her claims of the plaintiff's witness-bias.  In other words, the claimant failed to come forward with any controverting evidence to rebut the plaintiff's evidence and consequently failed to meet her burden.  Therefore, the court concludes that no reasonable juror could find that the claimant's income represented in

11

the defendant funds comes from legitimate means and accordingly grants the plaintiff's motion

for summary judgment and decree for forfeiture.


### V.    Conclusion

For the foregoing reasons, the court grants the plaintiff's motion for summary judgment

and decree of forfeiture.  An order consistent with this memorandum Opinion is separately and

contemporaneously issued this 28th day of February 2005.


RICARDO M. URBINA
United States District Judge